```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF GEORGIA
                           COLUMBUS DIVISION
```

|  |  |
|---|---|
| JENNIFER E. MCCORMICK, | * |
| Plaintiff, | * |
| vs. | *  CASE NO. 4:07-CV-161(CDL) |
| WILLIAM PETERSON, | * |
| Defendant. | * |

### O R D E R

This action arises from Defendant's arrest of Plaintiff for disorderly conduct. Plaintiff contends that Defendant lacked probable cause to arrest and detain her. She asserts federal claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), contending that Defendant violated her rights under the U.S. Constitution. Defendant has filed a motion for summary judgment as to Plaintiff's federal claims which is presently pending before the Court (Doc. 13). Finding that Defendant possessed probable cause to arrest Plaintiff, the Court grants Defendant's motion. The Court further declines to exercise supplemental jurisdiction over Plaintiff's state law claims which are therefore dismissed without prejudice.

### BACKGROUND

**I.   The Verbal Confrontation**

On February 24, 2007, at approximately 11:45 p.m., Plaintiff, along with friends Edward Gustov Swensen, Jr., C.J. Watkins, and

1

Walter Langford, arrived at the Big City Club in Columbus, Georgia for a night of socializing and dancing. (Def.'s Statement of Material Facts as to Which There is No Genuine Issue to be Tried [hereinafter SOF] ¶ 2.)[1]  Plaintiff's night took a turn for the worse when she noticed three girls-Jessica Favors, Samantha Dubois, and Brandi Warrick-walk up to her table in the club and push her bag and jacket off of a chair.  (*Id.* ¶ 3.)  The three girls, when asked by Plaintiff why they had pushed her things onto the floor, responded: "[I]f you're not sitting here, your stuff shouldn't be here[.]"  (*Id.* ¶ 4.) Plaintiff grabbed her things from the floor and walked away.  As she walked away from the girls, she told Swensen in a loud voice "[l]et me go now before I get mad."  (*Id.* ¶ 5.)  Plaintiff intended the three girls to hear the comment.  (*Id.*)

Plaintiff, believing that the three girls wanted to start a fight, overheard one of the girls say "[w]hat did she say? What - - do you want to fight? We can go outside."  (*Id.* ¶ 6.)  Plaintiff walked away from the three girls. (*Id.* ¶ 7.)  Plaintiff did not get into a physical altercation with any of the three girls while in the

---

[1]Plaintiff failed to respond to Defendant's Statement of Material Facts as to Which There is No Genuine Issue to be Tried.  "All material facts contained in the moving party's statement which are not specifically controverted by the [nonmoving party] in [nonmoving party's] statement shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. R. 56.  Therefore, all facts in Defendant's Statement of Material Facts are deemed admitted for the purposes of this Order.  Notwithstanding these "admissions," the Court acknowledges its duty to nevertheless "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact."  *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (internal quotation marks omitted).

Big City Club.  The club's bouncer escorted Favors out of the facility, and the other two girls followed her.  (*Id.* ¶ 8.) Plaintiff continued to stay in the club and socialize. (*Id.* ¶ 9.)

## II.   The Physical Altercation

At approximately 3 a.m. on February 25, 2007, Plaintiff, Swensen, Watkins, and Langford left the Big City Club and decided to get some late-night hot dogs.  (SOF ¶ 10.)  After they left the club and starting walking, Plaintiff heard the three girls screaming obscenities at her.  Plaintiff also heard the three girls tell her "to turn around and fight them like a real woman."  (*Id.* ¶ 12.) Plaintiff did not respond to the remark. Plaintiff continued to walk away from the three girls.  However, at some point, Plaintiff remembered being "taken to the ground."  (*Id.* ¶ 13.)  The three girls pulled Plaintiff's hair, kicked, punched, and pulled her to the concrete.  Plaintiff did not strike back because she was trying to cover her head.  (*Id.*)  Swensen, Watkins, and Langford pulled the three girls off of Plaintiff.  (*Id.* ¶ 16.)  Plaintiff suffered a scratch on her forehead and several bruises on her legs.  (*Id.* ¶ 17.)

## III. Plaintiff's Arrest

Columbus Police Department Officer Mike Moore was the senior officer on duty that night and arrived in time to witness the physical altercation between Plaintiff and the three girls.  (SOF ¶ 14.)  Defendant was the second officer to arrive at the scene. (*Id.* ¶ 15.)   When he arrived on the scene, Defendant noticed that

3

Plaintiff and the three other girls looked upset.  (*Id.*)  Defendant heard Plaintiff use obscenities towards the three girls.  (*Id.* ¶ 16.) Defendant spoke with Officer Moore about the physical altercation, and Officer Moore informed Defendant that "[e]veryone involved in the fight [was] going to jail[.]"  (*Id.* ¶ 22.)  Defendant interviewed Dubois, one of the three girls involved in the altercation.  (*Id.* ¶ 24.)  Specifically, Dubois informed Defendant that while they were all still in the Big City Club, Plaintiff stated loudly that she "better get [her]self another drink before [she] kick[ed] this bitch's ass," and that the verbal confrontation between them in the club had turned physical.  (*Id.* ¶ 19.)

When Defendant approached Plaintiff and informed her that she was under arrest, Plaintiff tried to no avail to explain that she was the victim.[2]  (SOF ¶ 20.)  In addition, Swensen attempted to explain to Defendant that Plaintiff was the victim.  However, Defendant told Swensen to step away from the police car and not to speak again. (*Id.* ¶ 28.)  Defendant handcuffed Plaintiff and escorted her to the jail in his police car.  During the ride to the jail, Defendant was "very rude" to Plaintiff, and spoke to her with complete disrespect; specifically, Plaintiff was told to "shut up" numerous times by Defendant.  (*Id.* ¶¶ 30-31.)  Plaintiff was charged with disorderly

---

[2]Defendant asserts that he smelled alcohol on Plaintiff's breath when he talked to her about the physical altercation.  (SOF ¶ 21.)

conduct under section 14-62.2(a) of the Columbus, Georgia Code.[3]  At approximately 5 a.m., Swensen bonded Plaintiff out of jail.[4]  (SOF ¶ 32.)  The charges against Plaintiff were later dismissed.  (*Id.* ¶ 33.)  Defendant received a reprimand from the Office of Professional Standards for his conduct in the physical altercation.  (*Id.* ¶ 34.)

Plaintiff contends that Defendant falsely arrested and imprisoned her in violation of the Georgia and federal Constitutions.  (*See* Compl. ¶¶ 12-17.)  Plaintiff asserts her claims arising from the alleged violation of the U.S. Constitution pursuant to 42 U.S.C. § 1983. On October 6, 2008, Defendant filed a Motion for Summary Judgment as to Plaintiff's § 1983 federal claims.  Plaintiff failed to respond to Defendant's motion.

---

[3]Section 14-62.2(a) of the Code of Columbus, Georgia provides, in pertinent part:

> A person may be charged with, and convicted of, the offense of disorderly conduct when such person commits any of the following acts: (1) Performs an unlawful act of violence or performs any other act in such a violent and tumultuous manner that the public peace and tranquility is disturbed; (2) Verbally or physical harasses, menaces, or intimidates a person to the disturbance of the public peace; (3) Engages in a fight in public which is not a part of an authorized exhibition; (4) Recklessly or knowingly commits an act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession; (5) Without provocation, uses to, or of another, in that person's presence, opprobrious, abusive, or obscene words which by their very utterance tend to incite a person to an immediate breach of the peace; . . . (8) Is in a public place or, without permission or invitation, upon the property of another, in a state of drunkenness exemplified by boisterous, vulgar, profane, or loud language, or by indecent personal condition, or by indecent act.

[4]Defendant informed Swensen that if he were to bond Plaintiff out of jail, it would be an admission of guilt.  (SOF ¶ 29.)

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When a defendant moves for summary judgment, it is the defendant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To meet this burden, the defendant may point to "affirmative evidence demonstrating that [the plaintiff] will be unable to prove [her] case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted). In the alternative, the defendant may show "that there is an absence of evidence to support the [plaintiff's] case." *Celotex Corp.*, 477 U.S. at 325. A defendant is not required to come forth with evidence negating the plaintiff's claim. *See id.*

Once a defendant meets its burden, the plaintiff must produce evidence to show that there *is* a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324. The plaintiff must "go beyond the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord Celotex Corp.*, 477 U.S. at 324. A plaintiff is not required to produce evidence in a form that would be admissible at trial, but she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at

6

324.  Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file.  *Id.; accord* Fed. R. Civ. P. 56(e).

The defendant is entitled to summary judgment if, after construing the evidence in the light most favorable to the plaintiff and drawing all justifiable inferences in her favor, no genuine issues of material fact remain to be tried.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the plaintiff-there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

DISCUSSION

**I.   Plaintiff's § 1983 Claims**

Plaintiff does not indicate whether Defendant is being sued in his individual or official capacity, or both.  "When it is not clear in which capacity the defendant[] [is] sued, the course of proceedings typically indicates the nature of the liability sought to be imposed."  *Jackson v. Ga Dep't of Transp.*, 16 F.3d 1573, 1575

(11th Cir. 1994). Defendant presumes in his Motion for Summary Judgment that he is being sued in both capacities. (*See* Ans. n.1; *see also* Def.'s Mot. for Summ. J. 3-7.) Thus, for the purposes of this Order, the Court concludes that Plaintiff brings claims against Defendant in both his official and individual capacities.

    A.   Claims Against Defendant in his Official Capacity

A claim against Defendant in his official capacity is the functional equivalent of a claim against the City of Columbus. *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against [the] entity of which [the] officer is an agent[.]" (second and third alterations in original) (internal quotation marks omitted)). In order to establish a § 1983 claim against the City, Plaintiff must show that her constitutional rights were violated and that the City had an official policy or custom that was the moving force behind the constitutional violations. Even assuming *arguendo* that Plaintiff can demonstrate a constitutional violation, Plaintiff has failed to point the Court to a city policy or custom that was the driving force behind the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (requiring a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused plaintiff's injury). Therefore, the City is entitled to summary judgment as to all of Plaintiff's § 1983

claims.  Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's claims against Defendant in his official capacity.

### B.  Claims Against Defendant in his Individual Capacity

Defendant maintains that he is entitled to qualified immunity as to Plaintiff's claims against him in his individual capacity. Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the qualified immunity analysis, Defendant must first prove he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Once Defendant establishes that he was acting within his discretionary authority, the burden shifts to Plaintiff to show that Defendant is not entitled to qualified immunity.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). In this case, Defendant was acting in his discretionary capacity when he arrested Plaintiff.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (finding that defendants were engaged in a discretionary function when they arrested plaintiff); *see also Eloy v. Guillot*, No. 07-13818, 2008 WL 2697211, at *2 (11th Cir. July 11, 2008) (same).

The next stage in the analysis involves a two-step inquiry. The first step entails determining whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right would have been violated were the allegations established, then the inquiry ends, and the officer would be entitled to qualified immunity. *Id.* However, if a violation could be established, the court must determine whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. In this case, the Court must first determine whether Defendant's conduct violated Plaintiff's constitutional rights.

In her Complaint, Plaintiff alleges two possible constitutional violations. She alleges that she was "falsely arrested" and "falsely imprisoned" by Defendant, both in violation of her rights under the United States Constitution. (Compl. ¶¶ 12, 16.) The Court will address each allegation in turn.

   *1. False Arrest*

The Court first addresses Plaintiff's § 1983 false arrest claim against Defendant. Here, Plaintiff alleges that Defendant failed to conduct a proper investigation, and thus, arrested her without

10

probable cause. (Compl. ¶ 7); s*ee also Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) ("An arresting officer is required to conduct a reasonable investigation to establish probable cause."). An arrest without probable cause violates Plaintiff's Fourth Amendment right to be free from an unreasonable search. *See Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003). "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). "In order for probable cause to exist, an arrest [must] be objectively reasonable under the totality of the circumstances." *Rankin*, 133 F.3d at 1435 (alteration in original) (internal quotation marks omitted).

The Court notes however that, even if probable cause is absent, qualified immunity protects an arresting officer as long as he had arguable probable cause for the arrest. "[A]ll that is required for qualified immunity to be applicable to an arresting officer is *arguable* probable cause to believe that a person is committing a particular public offense[.]" *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (per curiam) (internal citation and quotation marks omitted); *see also Williams v. City of Homestead, Fla.*, 206 F. App'x 886, 887-88 (11th Cir. 2006) (per curiam) (noting that an officer is entitled to qualified immunity where the officer had arguable probable cause). Arguable probable cause exists "where

11

reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest [Plaintiff]." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (internal quotation marks omitted). "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).

Based on the undisputed facts in the record, the Court finds that Defendant had arguable probable cause to arrest Plaintiff for violating section 14-62.2(a)(3) of the Columbus, Georgia Code. Plaintiff alleges that Defendant failed to conduct a proper investigation when Defendant did not interview Plaintiff's friends who witnessed the physical altercation. (*See* Compl. ¶ 6.) However, the Court notes that "[w]hile the [Eleventh Circuit] [does] recognize that [a]n arresting officer is required to conduct a reasonable investigation to establish probable cause, once an officer makes an arrest based on probable cause, he need not investigate every claim of innocence." *Williams*, 206 F. App'x at 888 (internal citation and quotation marks omitted) (fourth alteration in original); *see Kingsland v. City of Miami*, 382 F.3d 1220, 1229 n.10 (11th Cir. 2004) (noting that although "officers are not required to perform error-free investigations or independently investigate every proffered

12

claim of innocence," an officer may not turn "a blind eye to immediately available exculpatory information"). In this case, it is undisputed that Plaintiff was involved in the physical altercation. Defendant interviewed Plaintiff, who claimed that she was the victim. (SOF ¶ 20.) However, Defendant also interviewed Dubois, who claimed that Plaintiff was the initial aggressor. (*Id.* ¶ 19.) Defendant also spoke with Officer Moore, who had personal knowledge of the physical altercation, and who informed Defendant that Plaintiff had been involved in a physical altercation and that all four women were to be arrested. (*See, e.g.*, *id.* ¶¶ 19, 22, 24.) On these facts, the Court cannot say that Defendant could not reasonably have believed Plaintiff's conduct to be in violation of section 14-62.2(3) of the Columbus, Georgia Code; nor can the Court say that Defendant "turned a blind eye to immediately available exculpatory information."[5] *Kingsland*, 382 F.3d at 1229 n.10. Therefore, the Court finds that Defendant did not violate Plaintiff's constitutional rights. Accordingly, Defendant's motion is granted as to Plaintiff's § 1983 false arrest claim.

---

[5] The Court recognizes that Defendant was reprimanded for his failure to sufficiently investigate the incident at issue in this case. (*See* SOF ¶ 34.) However, the Court concludes that while Defendant arguably could have conducted a more thorough investigation, the quality of his investigation does not deprive him of qualified immunity. Furthermore, the Court notes that Plaintiff has failed to point the Court to any evidence in the record to suggest otherwise.

*2.   False Imprisonment*

The Court next addresses Plaintiff's § 1983 false imprisonment claim against Defendant.  "A false imprisonment claim under [§] 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law."  *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996).  To establish a false imprisonment claim under § 1983, Plaintiff must meet the elements of common law false imprisonment[6] and establish that the imprisonment resulted in a violation of her due process rights under the Fourteenth Amendment.  *See White v. Thompson*, No. 08-12045, 2008 WL 4823988, *1 (11th Cir. Nov. 07, 2008) (per curiam).  Negligent conduct is not enough to give rise to a § 1983 claim for false imprisonment; "a showing of deliberate indifference is required to establish a violation of substantive due process rights protected by the [F]ourteenth [A]mendment."  *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993).

Plaintiff alleges that Defendant's failure to properly investigate the cause of the physical altercation not only led to her false arrest, but also led to her false imprisonment.  (*See* Compl. ¶ 16.)  Here, because the Court finds that Defendant had arguable probable cause to arrest Plaintiff under the circumstances existing at the time, no violation of Plaintiff's constitutional rights can be

---

[6]Plaintiff must prove "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm."  *Ortega*, 85 F.3d at 1526 n.2.

shown.  In addition, even assuming *arguendo* that Defendant did not have arguable probable cause to arrest Plaintiff, the undisputed facts do not indicate that Defendant acted with deliberate indifference in detaining Plaintiff.  Therefore, Plaintiff's false imprisonment claim under § 1983 must fail.  Accordingly, Defendant's motion is granted as to Plaintiff's § 1983 false imprisonment claim.

CONCLUSION

As explained above, Defendant's conduct did not violate Plaintiff's federal constitutional rights.  Therefore, Defendant's Motion for Summary Judgment (Doc. 13) is granted as to Plaintiff's § 1983 false arrest and false imprisonment claims.  Having disposed of all of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  Accordingly, those claims are dismissed without prejudice.

IT IS SO ORDERED, this 1st day of December, 2008.

                                  S/Clay D. Land
                                    CLAY D. LAND
                    UNITED STATES DISTRICT JUDGE